Good morning, your honors. Kimberly Hutchison for the plaintiff appellant Roger Parker. I intend to reserve three minutes for rebuttal. This court should reverse the district court because Parker's first amended complaint sufficiently pled an allegation that the Riverside County District Attorney's Office violated his rights through an unconstitutional policy or practice of withholding exculpatory evidence in order to pursue convictions at any cost, which resulted in his prolonged, unusually prolonged detention. So I have a factual question that I couldn't determine from the briefing of the record, but why did he not have a first of all, did preliminary hearing was continued several times. So he had counsel, he did have appointed counsel and they never filed any motions, speedy trial violations, anything like that? No, your honor. The only allegation in the complaint with respect to the criminal proceedings was that the assigned district attorney, Mr. Ross spoke in chambers to the judge, Judge Ryan, asking him to dismiss the case and that Judge Ryan was not willing to do so. But there was a not guilty plea? Yes, it had consistently was a not guilty plea, but a preliminary hearing was never held. And the reason for the, because the counsel agreed to extend the time for a preliminary hearing over and over and over again? Yes, while never being provided this material exculpatory evidence. So this perhaps relates to, if we get past this stage, whether that would be a due process violation, the withholding of the exculpatory evidence at this pre-hearing stage. This court previously, in the last time that we were up here on an interlocutory appeal, decided that that was a cognizable claim under Tatum-Lee. And so that issue is really not before this court. I think the prior panel said that leave to amend should be allowed to plead under Tatum-Lee, but it didn't make any decision whether there was a true claim. Correct. And then the district court denied the defendant's motion to dismiss on those grounds. And there is no cross appeal here. So that issue is not presented to the court in this case. What's presented to the course here is whether that's a viable Monell claim against the county, which it is because it's an administrative policy. And this court can easily reach that conclusion by actually exactly following the reason in the Goldstein case. Section B lays out the constitutional and statutory sections under California law that show that the district attorney is actually a county official. Well, in some context. Exactly. In some contexts, the district attorney is a county official, but in others, he or she is a state official. Exactly. And so how are these not prosecutorial decisions, not to disclose evidence, not to dismiss a case? And actually, it's section C of Goldstein that shows that. So section C gets into this particular function. In Goldstein, it was the informant collection. Here, it's exculpatory evidence. But what the Goldstein court looked at was the commission report, the final commission report, which laid out all of these recommendations of how policies should be established. In Goldstein, it very clearly established that the handling of informant information should be handled by a district attorney's office on a local level. And that was what drove the Goldstein court's decision that that was an administrative policy and that the district attorney was acting as a county official in making it. In that exact same report, if you go to the section about exculpatory evidence, the exact same recommendations are made. And so what I'm specifically pointing to is that page 16 of that report, the recommendations are specifically made for prosecutors. And I'm quoting here that all district attorney offices formulate and disseminate a written office policy to govern Brady compliance. That's exactly mirroring what the report said for informant compliance in Goldstein. But you're not arguing that they didn't promulgate a policy on Brady compliance. You're arguing that they didn't dismiss the case or they didn't disclose exculpatory evidence. It seems difficult to reconcile that with the case law that supervisors also are immune from the conduct of the line prosecutors. So the supervisors who did not force the disclosure or allow the disclosure were acting as supervisors of the line prosecutors who are immune. So I think this is actually an error in the district court's decision here and a misreading of the first amended complaint. If you look at the first amended complaint paragraph 61 and 62, which is at the second volume of the ER on page 44, the specific allegation is that the county had an unconstitutional custom pattern and practice of withholding exculpatory evidence. The next paragraph says the county had a custom and practice of intimidating and punishing low level prosecutors who refused to withhold significant exculpatory evidence from criminal say that that is the moving force of the constitutional violation for Parker. And so perhaps the use of the alternative theory of ratification here is what was confusing to the district judge, but the complaint does allege an unconstitutional policy practice or custom of withholding exculpatory evidence, which was what was implemented in this case, that administrative policy, and which is what led to Parker's due process violation here. And so if this court, I think the complaint sufficiently alleges that, but if this court were to decide that that was not sufficiently alleged there, it could remand for us to file another amended complaint and additional information could be added to show that this was a practice and custom. And for that, I would point to the amicus brief, which brought up significant other evidence of Brady violations like this one coming from the Riverside County District Attorney's Office. So it's clear that this was not an individual choice in Parker's case to withhold evidence. It was part of a longstanding custom and practice that this court actually called out in oral argument. Judge Kaczynski noted that the Riverside District Attorney's Office was committing Brady violations and showing no desire to change that practice, showing no shame in that practice and admitting wrongdoing. And that's the problem here. Under the district court's analysis by deciding that this unconstitutional policy is not subject to Monell review, there is a huge gap in a remedy available to a criminal defendant whose rights are being violated. Someone like Mr. Parker, who never was convicted, yet spent four years in custody, would have no remedy for that violation if not for Section 1983. And because of what Your Honor recognized in terms of individual prosecutorial immunity, it's Monell that needs to provide this kind of action for him. And I say that because absent this kind of liability, there's no incentive for a district attorney's office to follow the law. They can have unconstitutional policies that they will never be liable for. This is an example of what Monell, really what 1983 was made for, but why Monell allows 1983 liability to be extended to government entities. And part of the issue was also, unfortunately, poor lawyering by your clients at the trial court level, not asking for a preliminary hearing for four years. I mean, you know, should have put the burden on the government to show what evidence they have to continue detaining him. I'm not, you know, mitigating what you said, but that was part of the problem, at least in this case, is they just, for whatever reason, for four years never asked the government to, you know, kind of show its cards. I certainly understand the concern, Your Honor, but respectfully, that attorney did not have this exculpatory information. So being asked to go forward on a preliminary hearing with only what was clearly a false conviction, but no alternative evidence to present, I'm not sure that that failure is attributable to the defense attorney, rather to the county that deliberately withheld the exculpatory evidence that would have changed the result of that preliminary hearing. But four years is such a long time for defense counsel to let that continue. It seems that you're suggesting we should, I think in your brief, you suggested we should find an exception to the absolute immunity because these circumstances were so egregious. And I don't that seems to be an argument that there just should be no immunity, which is not something that we can decide. I mean, the Supreme Court has announced this doctrine, not the Ninth Circuit, so we're bound by it. And then I think Judge Lee's point is well taken. You're saying there's no remedy. There is. There's a malpractice claim here. It seems that that is one remedy. There's also bar complaints against the lawyers involved. I mean, there are other things that can happen, aside from civil liability, that the Supreme Court has said there's immunity. And so first, I appreciate your recognition that what Mr. Parker suffered here was egregious and a harm that he should have some kind of a remedy for. Again, I point to the commission report here. In discussing these suggested changes that the state was delegating to county officials, they outlined the extreme lack of enforcement in the areas that you just suggested. So one of the things that's outlined in that report is how malpractice committed by prosecutors is very rarely reported and even less often acted on. And so the individual, while I understand what you're saying about individual prosecutorial immunity, that particular type of enforcement that you've suggested here not only would not benefit Mr. Parker, but also is not being used in a great way. But more to the point, that is only talking about basically bad apples within a prosecutor's office. What we're talking about here is a county office that has an unconstitutional policy. So immunizing individual defendants, while that may be required by the Supreme Court, it doesn't protect an entire office from having an unconstitutional policy that harms individuals. And that's the harm that we're asking this court to hold can be addressed through a Monell claim here. It's not the harm of a conviction. It's not the harm of one bad prosecutor. It's the harm of an entire office deciding that their constitutional obligation to turn over exculpatory evidence is going to be ignored and intentionally ignored for the sake of pursuing convictions at any cost. It's that unconstitutional policy that we laid out in the first amended complaint that completely aligns with the administrative policy in Goldstein. And I do suggest, your honors, you could completely copy section B of Goldstein and then section C and just sub in the sections of the commission report that are dealing with exculpatory evidence rather than the ones about informant evidence because they completely line up here. The administrative policy for informant evidence that was held to be subject to a Monell claim in Goldstein is described in exactly the same way in the commission report as the exculpatory evidence. And I would read for your honors also review in that commission report at page 97, which is explaining the reasons that this was designated to counties to establish these policies as opposed to the state. The commission says the size and organization of prosecutor's offices throughout the state of California very substantially and assuring full compliance with these obligations is best addressed by the adoption of clear administrative policies within each office. That is a clear indication that the state of California believes that a district attorney is acting as a county official when establishing policies related to the disclosure of exculpatory evidence. That policy in the county of Riverside was to withhold exculpatory evidence resulting in the prolonged incarceration of people like Mr. Parker. That is a cognizable claim under Goldstein, so this court should reverse. Is it your position that the attorneys here were ordered by the county not to give exculpatory evidence or was that up to their discretion? It was part of a policy practice or custom, so I'm not suggesting it was an individual order in this case. It was actually the policy of the office to withhold this exculpatory evidence. So they would be going against a policy to give Brady evidence over the side? Yes, to give Brady evidence. That's your allegation? Correct. That is the allegation of the complaint and I will reserve my meeting time for rebuttal. Thank you. Thank you. Counsel, I see you are splitting time with your colleague. You have nine minutes and Ms. McLaughlin has six. We're going to use separate clocks to make sure Ms. McLaughlin actually gets her six minutes. If you are reserving, please explain to me how you wish to reserve time and who's going to. Absolutely, I will do that. I'm sorry, you guys are not reserving time. You're not doing a rebuttal. That's correct. Your opponent is. Okay, go ahead. Sorry, my confusion. That's all right. Good morning. May it please the court, Tony Sane and Abigail McLaughlin on behalf of the defendant and appellees, the county of Riverside and the four defendant prosecutors. I will be addressing the immunity and due process issues. My partner, Ms. McLaughlin, will be addressing the Monell state actor and other claims issues. Before I turn to the immunity, your honors, I believe that there is a fatal flaw in plaintiff's entire case that eliminates further discussion or the need for further discussion. One cannot have the exact same conduct by the exact same actors at the exact same portion of criminal proceedings under the exact same constitutional provision be both actionable and not actionable. The Supreme Court has been very clear in multiple cases that when it comes to a criminal prosecutor's failure to disclose exculpatory evidence to a criminal defendant at any point before trial or conviction, there is no actionable claim under the due process clause period, full stop. But that's for the purpose of allowing the federal prosecutor or the prosecutor to prosecute the claims that he thinks are valid, as opposed to the claims that he doesn't think is valid, right? That is part of the purpose, yes, your honor. The plaintiff takes the position that that decision-making power, given a professional prosecutor, was taken away from the professional prosecutors by the Monell claim. Your honor, I'll let my partner address that specific issue, but I'll just summarize by saying that obviously we know that any individual prosecutor has the ability and the discretion to comply or not comply with a policy. Plaintiff's allegation assumes, against all logic and fact, that prosecutors are automatons, that they do what policy tells them to do and have no discretion, take no action. If that were the case, if they had no individual decision-making power, then they would be immune from liability for lack of intentional conduct, which is not the case. But going back to this larger issue, plaintiffs just said on their oral argument twice that the wrong that they are seeking to vindicate was a Brady violation, a failure to disclose exculpatory evidence to the criminal defendant. The case law has been very clear that that claim is not actionable before there's been a criminal conviction, which is not the case here. In fact, it's undisputed in this case that there wasn't even an evidentiary proceeding where this exculpatory evidence might have affected the outcome. The bottom line is that what Tatum-Lee addresses is a completely different set of conduct than is actionable under the Due Process Clause for criminal prosecutors' disclosures of exculpatory evidence to criminal defendants. That's a different set of conduct. That conduct in Tatum-Lee is about law enforcement officers failing to disclose exculpatory conduct to the prosecutors, and that being a potential due process violation, which is not the factual allegation here. So they don't even have an actionable claim under the due process under all the precedent of the Supreme Court and this circuit. And even if they did, we would be immune. I'm sorry, Your Honor, it seemed like you had a question. I do. So your friend on the other side argued that there's no accountability for the prosecutors. There's no remedy. And I mean, you would normally have the specter of a conviction being overturned because of a Brady violation, things like that, or evidence being excluded. Well, that didn't happen because there's no trial. And so there's no remedy against prosecutors in that sense. But she seems to be correct that there's no mechanism here to hold the prosecutors accountable for what appears to be pretty egregious misconduct. Your Honor, I disagree with that respectfully because there was a remedy. In addition to the remedy that Your Honor cited, the remedy was a timely filing of a malicious prosecution claim. But Mr. Parker didn't do that. He waited for over seven years, well past the statute of limitations, to bring that claim. It was time barred in the earlier proceeding. That ruling was never challenged on appeal. So there is a viable path for relief, but it's not a Brady claim. It's a different kind of claim based on different conduct. And that was not what was alleged in this case. It's not what's at issue in this case. And I think what's also important to emphasize, Your Honor, is that even if there had been a viable due process claim here, which there's not, these defendant prosecutors would be immune. As Your Honor implied, the absolute immunity is designed to protect the vigorous prosecution of crime, to protect society writ large. If we chill that by allowing civil liability against individual prosecutors like the four defendant prosecutorial supervisors here, we are hurting ourselves as a society. That's why that immunity applies. And the scope of the immunity applies to prosecutorial decisions. And the case law could not be clearer. Over and over and over again, the case law tells us that when it comes to decisions like calling witnesses, bringing charges, and specifically whether or not and when to disclose exculpatory evidence, those are prosecutorial decisions that fall squarely within the ambit of the absolute immunity. Even when the bosses of the prosecutors tell them not to prosecute? Assuming that that were true, I believe that the allegation, Your Honor, is that the bosses of the prosecutors told them not to disclose the exculpatory evidence or didn't disclose it to the underlying prosecutors. Assuming that's the allegation, yes, those are prosecutorial decisions that are absolutely covered by the immunity. With that said, Your Honor, unless the Court has any questions, I do believe that this is pretty clear and falls squarely within the case law. I would also like to direct the Court's attention to the concurrence that was filed in the prior Parker case that was written by Judge Nelson, where he explains that in that prior Parker case, this Court, slightly deviating from Supreme Court precedents and mandates, had expanded the Brady disclosure right to all the way up to including evidentiary proceedings before trial. That's never before been ruled. That's never something the Supreme Court has allowed. But in Parker 1, this Court extended it to pre-trial evidentiary proceedings like the preliminary hearing. But that doesn't save Mr. Parker's claim here, because it's also undisputed that there was no pre-trial evidentiary proceeding. There was no evidentiary or court proceeding where this evidence could have affected the outcome. And that's why in Parker 1, that Brady violation claim that plaintiffs just conceded is still being litigated right here today is invalid. And with that, Your Honor, I'll view the balance of my time to my co-counsel who will address the Court's other issues. Thank you. Thank you. Good morning, Your Honors. And as my colleague said, my name is Abigail McLaughlin, and I also represent the defendants in this matter. I will be addressing the Monell claim at issue specifically that it cannot be maintained where a district attorney is acting as a state actor when preparing to prosecute and prosecuting criminal violations of state law. I respectfully disagree with my friend on the other side that Goldstein is on all fours with this matter. Goldstein specifically addressed an information database regarding informant information where both the defense counsel and the prosecutor were not made aware that an informant had continuously received benefits for his testimony and had ultimately perjured himself. The issue there was a database that aided those prosecutors in regards to their constitutional duties. It would be similar in report that my friend on the other side pointed out as to the Brady list required in district attorneys' offices, which aids prosecutors in regards to which officers have in the past violated Brady or not. But that type of list is not what is at issue in this matter. What is at issue in this matter is the issue as to whether an alleged policy, and I know that at this stage of the appeal, we're taking all of their facts as true. We obviously love those facts, but we're taking them as true. That there was a policy that under any circumstance that exculpatory evidence should not be turned over. But that's not the allegations in plaintiff's complaint as to the violation of Mr. Parker's constitutional rights. And for a Monell liability claim, you need that underlying constitutional violation. It's a pendant claim. Here what they're saying is that everybody knew about this evidence and made the decision, the active decision, to not turn over that evidence, which is specifically a prosecutorial decision. It is a decision to continue to prosecute, even with knowledge of potential exculpatory evidence. But if the bosses of the prosecutors tell them never to turn over exculpatory evidence, that they're not making it, the prosecutors aren't making the decision, their bosses are. Well, in this matter, Your Honor, the boss made the decision with the knowledge of the specific exculpatory evidence in Parker's case. It wasn't a blanket policy that caused Parker's constitutional violation. That's not what I understand the plaintiff to be saying. The plaintiff is saying that Riverside had a policy not to give exculpatory evidence over. Not just in Parker's case, but in everybody's case. Your Honor, you are correct that that's their allegation. But when it comes to the underlying constitutional violation as to Parker, which is required, so in order to bring a Monell liability claim, you have to show an underlying constitution. But you're assuming the prosecutor made that decision rather than his boss. Well, actually, in plaintiff's complaint, and I apologize that I don't have the exact paragraphs in front of me, Your Honor, they actually allege that Zellerbach was informed and knew of the policy. They're saying from the bottom to the top, they all knew about this specific case. That doesn't meet the issue that was put by the plaintiff, which is, was he acting pursuant to a policy or did he make the decision himself? Well, in this case, Your Honor, the decision by the underlying district attorney, Ross, he knew about the exculpatory evidence, taking the facts as true, he wanted to turn it over. He brought the exculpatory evidence to his supervisors, and they didn't say, well, per our policy, turn it over. The allegations in the complaint is that they said, in this specific matter, don't turn over the exculpatory evidence. But weren't there two line prosecutors that were brought in and both of them said, no, we don't have enough evidence here. We got the wrong guy. But then their supervisor, in both instances, just ignored them or ordered them not to turn it over. I mean, just more of a policy if you have two line attorneys who looked at the facts and say, no, we have the wrong guy. Well, Your Honor, yes, in that instance, taking the allegations is true. There were two that said, we have the wrong guy. But two instances, that's not a blanket policy of don't turn over the evidence. They were presented with the specific evidence and they made the decision to continue to prosecute. That's not what the plaintiff was alleging. They're saying that regardless of this case, this case was simply a cookie cutter case, exculpatory evidence, we have a policy not to turn it over, then we don't turn it over. Well, Your Honor, respectfully, I disagree with the contention that this is a cookie cutter case. As you all have already pointed out, this really wasn't a cookie cutter case because we didn't have a preliminary hearing for four years. We have other factors going on. It's not, especially in terms of the exculpatory evidence. I think their position is that the decision not to turn over the exculpatory evidence was not made by the prosecutors, but by the county and an administrative action. Correct. But it's still not an administrative action, Your Honor. It is still a decision not to turn over exculpatory evidence and to continue to prosecute, which is a prosecutorial decision. Consistent with the administrative policy. Even though it is consistent with the administrative policy under Goldstein, even if it is a policy, if it is a policy that embodies a prosecutorial action, a decision in regards to prosecution, even if it's an overarching policy, it's still prosecutorial in nature. And the individual, the supervisor making the decision, is acting as a state official in saying, we are going to continue the prosecution in this case, that under Brougham and Bogan, they are immune, as my colleague stated, in regards to turning over exculpatory evidence, and under the other progenies cited in our brief, it is also specifically, I'm so sorry, Your Honor. I just lost my train of thought. The defendants here, I do want to point out, are not all lying prosecutors. They are the supervisors. And those supervisors, even if there is a policy, as Plaintiff alleges, getting back to my point, I'm making it there, even if there is a policy, Plaintiff's alleged, that policy still underlies a prosecutorial decision on whether to prosecute or not. We are not talking about a Brady List database that wasn't set up and was ignored. We're not talking about the database in Goldstein that's referring to an index of individuals. We are talking about the decision whether to turn over exculpatory evidence and whether to prosecute or not. And going back to what my colleague was talking about in regards to the underlying constitutional violation, as we keep saying, all of this sounds in Brady. This court has already determined that a Brady violation was not actionable here. The underlying constitutional violation has to be in regards to Mr. Parker. And there is not an underlying constitutional violation that is not subject to prosecutorial immunity and is not in regards to a specific prosecutorial decision whether or not to convict. I see my time is up, so if there are no remaining questions, I'll allow rebuttal to proceed. Thank you. Thank you, Your Honors. I just have three brief points in rebuttal. First, to the extent I referred to a Brady violation, I'm referring to the withholding of exculpatory evidence. The commission report refers to exculpatory evidence as Brady evidence, but this is a Tatum-Lee violation, as this court previously talked about. Second, my colleague who was just speaking said Goldstein is not on all fours because Goldstein was talking about compiling a list and we are talking about turning over exculpatory information. I think that's giving short shrift to what Goldstein was actually reading in the commission report. If you read the two parts of the commission report together, they're both talking about compiling lists and then using the information on the list to fulfill obligations. When it comes to exculpatory evidence, the commission report is specifically recommending an administrative policy for gathering exculpatory material in a systematic fashion, tracking the delivery of that material, and disclosing that material determined to be relevant. Notably, that was supposed to happen as soon as that determination is made that it's exculpatory prior to the entry of a guilty plea. So your argument on the Tatum-Lee claim, I think, goes to the causation prong. So the three parts of the claim that the detention was prolonged, knowledge that it was wrongful, and it caused the injury. And your theory for causation is that they failed to dismiss the charges and they did not disclose this exculpatory evidence. So how are those two allegations of causation not prosecutorial decisions that are immune? Declining to dismiss charges and failing to disclose exculpatory evidence. So those two things are together encapsulated by the administrative policy to not dismiss charges, fail to disclose exculpatory evidence, to pursue convictions at any cost. And so I would also just point out to your honors, the arguments about whether this is a viable Tatum-Lee claim were not pursued on a cross appeal by opposing counsel. What we're focusing on is what your honor correctly recognized. Our allegation is that this was not an individual. And this is an appeal from a judgment on the pleadings. So your allegations have to be taken to be true. Exactly. And our allegations are that this was the application of an administrative policy, which is. Well, that's a conclusionary allegation. You have to allege objective facts from which we can infer under Iqbal, right? Correct, your honor. And to the extent that we failed to include specific facts about that, I would say it was error for the district court to deny leave to amend. This was the first time in many years that opposing counsel raised the issue of immunity. Did you make a proffer of what objective facts you would allege if you were allowed to amend? No, we were denied leave to amend. We did not make a proffer. I didn't ask whether you were denied leave to amend. My question was, did you make a proffer of what facts of objective facts you would plead if you were given the opportunity to amend? Oh, I. You're wracking my memory. I'm sorry, I don't remember this. I believe that we asked for leave to amend because we could add additional facts showing that this was a practice. I'll try a third time. Did you make a proffer of evidence as to what you would actually allege? No, not separately. I believe in our opposition. We asked for leave to amend and suggested that we could include additional facts about this. What facts? Those facts are largely summarized in the amicus brief of the numerous Brady violations committed by the Riverside County District Attorney's Office. And by Brady violations, I don't mean any prosecutorial misconduct of withholding exculpatory evidence. So we could certainly supplement our complaint to explain all of those prior instances of misconduct and further bring out this court's recognition of that pattern of misconduct. It is the pattern of withholding exculpatory evidence pursuant to this administrative policy that is the due process violation here. The amicus brief was not before the district court. So is it your position that something that is not presented to the district court but later submitted to the court of appeals is sufficient as a proffer? No, I'm not suggesting that. We did not submit a proffer. We did ask for leave to amend. The district court decided that we should not be granted leave to amend, despite the federal rules saying it should be freely granted. Unless it's futile. So if you had made a proffer, you could have explained to the district court this would not be futile because we could show this evidence. And respectfully, I believe it was the district court's error in determining that it would be futile without considering our argument that there was a pattern in practice here. So what we did present to the district court was Judge Kuczynski's statements about how this was a repeated behavior of Riverside County. If the district court did not think that was a sufficient allegation of a pattern of practice, we would be able to supplement that. And retrospect to 2020, if I could go back now sitting in this moment and submit that proffer, I would have. But I do think the federal rules allow for liberal amending when it wouldn't be futile. And this court can see that it would not be futile based on the information before you. And so I would ask, if you do not reverse on the finding that the person made a complaint sufficiently pleasant, we'll now claim that you at least remand to give us an opportunity to amend and add those facts. Thank you, Your Honors. Thank you. Council, thank you all, all three of you, for your arguments this morning. They were helpful. And this case is submitted.
judges: BEA, BADE, LEE